CALCATERRA POLLACK LLP
MICHAEL LISKOW (243899)
JANINE L. POLLACK, ESQ.
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Phone: (917) 899-1765
Fax:  (332) 206-2073
Email:  mliskow@calcaterrapollack.com
          jpollack@calcaterrapollack.com

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

VANESSA MATHIESEN,
Individually and on Behalf of All
Others Similarly Situated,

Plaintiff,

v.

PLUM, PBC,

Defendant.

Case No. _____

**CLASS ACTION COMPLAINT FOR:**

(1) NEGLIGENT MISREPRESENTATION;
(2) VIOLATIONS OF THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT;
(3) VIOLATIONS OF THE CALIFORNIA
FALSE ADVERTISING LAW;
(4) VIOLATIONS OF THE CALIFORNIA
UNFAIR COMPETITION LAW;
(5) UNJUST ENRICHMENT.

**DEMAND FOR JURY TRIAL**

1.     Plaintiff Vanessa Mathiesen ("Plaintiff"), by and through her counsel, on her own behalf and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Plum, PBC ("Plum" or "Defendant") and alleges the following facts in support of her claims against Defendant based upon personal knowledge, where applicable, information and belief, and the investigation of counsel:

**<u>NATURE OF THE ACTION</u>**

2.     Parents and other caregivers, including Plaintiff, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic, and that is what Defendant wanted them to think.  Alarmingly, parents and Plaintiff were wrong.  A recent report by the U.S. House of Representatives' Subcommittee on Economic and Consumer Policy, Committee on Oversight and Reform ("House Subcommittee") reveals that certain brands of commercial baby food – including Plum's food products (the "Tainted Baby Foods") – are tainted with significant and dangerous levels of toxic heavy metals, including but not limited to arsenic, lead, mercury, and cadmium.  *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium and Mercury*, Staff Report Dated February 4, 2021, Subcommittee on Economic and Consumer Policy Committee on Oversight and Reform, U.S. House of Representatives (the "Congressional Report").[1]  Exposure to toxic heavy metals causes permanent decreases in IQ and endangers neurological development and long-term brain function, among numerous other deleterious alarming conditions and problems.

3.     Plaintiff brings this class action against Defendant for deceptive business practices, including misrepresentations and omissions, regarding the presence of dangerous levels of toxic heavy metals and other contaminants contained within Defendant Plum's baby foods, including

---

[1]  *Available at*  https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (last accessed March 12, 2021).

those that Plaintiff purchased.  Plaintiff seeks injunctive and monetary relief on behalf of the proposed Class including (i) requiring full disclosure of all such substances and ingredients in Defendant's marketing, advertising, and labeling; (ii) requiring testing of all ingredients and final products for such substances; and (iii) restoring monies to the members of the proposed Class.

4. No reasonable consumer purchasing baby foods or seeing Defendant's representations in advertising would expect the baby foods to contain dangerous levels of heavy metals or other undesirable toxins or contaminants.  Furthermore, reasonable consumers, like Plaintiff, would consider the inclusion of dangerous levels of heavy metals or other undesirable toxins or contaminants a material fact when considering what baby food to purchase.

5. Defendant intended for consumers to rely on its representations, and reasonable consumers did in fact so rely.  However, Defendant's business practices, representations and omissions were deceptive, misleading, unfair, and/or false because, among other things, the Tainted Baby Foods contained undisclosed dangerous levels of toxic heavy metals or other undesirable toxins or contaminants.

6. Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Class (as defined herein), who, from the applicable limitations period up to and including the present, purchased for personal/household use and not resale any of Defendant's Tainted Baby Foods.  Through this action, Plaintiff asserts claims for negligent misrepresentation, unjust enrichment, and violations of California's Consumer Legal Remedies Act (California Civil Code §§1750 *et seq.*), the California False Advertising Law (California Business & Professions Code §§17500 *et seq.*), and the California Unfair Competition Law (California Business & Professions Code §§17200 *et seq.*) seeking monetary damages, injunctive relief, and all other relief as authorized in equity or by law.

**Parties**

*Plaintiff Mathiesen*

7.     Plaintiff Vanessa Mathiesen is a citizen and resident of the State of California, residing in San Gabriel, California.  During the applicable statute of limitations period, Plaintiff Mathiesen purchased Tainted Baby Foods that were manufactured and produced by Defendant that have been found to contain dangerous levels of toxic heavy metals, including Plum Organics Pear Spinach and Pea Baby Food.

*Defendant Plum, PBC*

8.     Defendant Plum, PBC is a Delaware public benefit corporation with its principal place of business located at 1485 Park Avenue, Suite 200, Emeryville, California.  Defendant is a citizen of the State of California.  On its website Plum emphasizes its status as a public benefit corporation, explaining that PBC status means Plum exists "to both make a profit and serve a greater societal purpose (i.e., make the world a little better)."[2]  Plum's stated public benefit is "to deliver nourishing, organic food to our nation's little ones and to raise awareness and advance solutions for childhood hunger and malnutrition in the United States."[3]

9.     Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells its Tainted Baby Foods under the name "Plum Organics" throughout the United States, including California.

10.     Defendant states on its website, "Plum was founded on the belief that little ones deserve the very best food from the very first bite."[4]  Plum further touts that it is "confident in the safety and quality of our products. Our top priority is to serve children healthy, nutritious food

---

[2] https://www.plumorganics.com/benefit-corp/ (last accessed March 12, 2021).

[3] *Id.*

[4] www.plumorganics.com/mission/ (last accessed March 12, 2021).

CLASS ACTION COMPLAINT

made from the best ingredients."[5]  Moreover, Defendant Plum's website states, "We want to assure you that Plum's products are safe (and delicious) to eat!"[6]  Defendant goes on to claim that consumers can trust Plum's assurances about food safety simply because the company serves the same food to its own children.[7]

11.     Defendant sells baby food products in the form of varying stages of pouches, Super Puffs, and Little Teethers.  The Congressional Report concludes that numerous such products are tainted and contain dangerous levels of toxic heavy metals, as confirmed by limited independent testing.

### **Jurisdiction and Venue**

12.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because at least one Class Member is of diverse state citizenship from Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13.     The Northern District of California has personal jurisdiction over Defendant as Defendant is headquartered in this District and conducts substantial business in this State and in this District through its headquarters, sale of products, and commercial website.

14.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant has its principal place of business in this District and because a substantial part of the events, misrepresentations and/or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and were emanated from this District.

---

[5] www.plumorganics.com/faqs/ (last accessed March 12, 2021).

[6] *Id*.

[7] *Id*.

CLASS ACTION COMPLAINT

## II.     FACTUAL ALLEGATIONS

### <u>Congressional Investigation Finds Dangerous Levels of Heavy Metals in Baby Foods</u>

15.     On February 4, 2021, the House Subcommittee issued its Congressional Report detailing its findings that heavy metals, including arsenic, cadmium, lead, and mercury ("Heavy Metals"), were present in dangerously "significant levels" in numerous commercial baby food products.

16.     The FDA and the WHO have declared Heavy Metals dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.  Even low levels of exposure can cause serious and often irreversible damage to brain development.  *See* Congressional Report at 2.  In fact, children's exposure to toxic heavy metals causes, among other things, permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[8]  *See id*. at 9.  The FDA cautions that infants and children are at the greatest risk of harm from toxic heavy metal exposure.[9]

17.     On November 6, 2019, following reports alleging high levels of toxic heavy metals in baby foods, the House Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food in the United States, including both makers of organic and conventional products.  *See id*. at 2.  One of those companies was Defendant.  *See id*.

18.     Alarmingly, Defendant Plum refused to cooperate with the Subcommittee's investigation.  *See id*.  According to the Congressional Report, Plum "refused to produce its testing

---

[8] Miguel Rodriguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioral Disorders in Children:  A Systematic Review and Meta-Analysis* (April 9, 2013) (*available at* www.sciencedirect.com/science/article/abs/pii/S0048969713003409?via%3Dihub (last accessed March 12, 2021).

[9] Food and Drug Administration, *Metals and Your Food* (*available at* www.fda.gov/food/chemicals-metals-pesticides-food/metals-and-your-food (last accessed March 12, 2021).

CLASS ACTION COMPLAINT

standards and specific testing results to the Subcommittee. [Plum] has hidden its policies and the actual level of toxic heavy metals in its products." *Id*. at 44.  Rather than producing any substantive information to the Subcommittee, Defendant provided only "a spreadsheet self-declaring that every one of its products 'meets criteria.'"  *Id*.  However, Defendant declined to state what those criteria are.  *See id*.  The Congressional Report stated that Plum's "testing summary hides more than it reveals, since it does not show the levels of heavy metals that the testing found or the levels of heavy metals that would 'meet criteria.'"  *Id*. at 45.

19.  The Subcommittee also stated that it had "*grave concerns* about baby food products manufactured by" Defendant Plum, noting that it was "greatly concerned" that Plum's lack of cooperation could "obscure the presence of even higher levels of toxic heavy metals in their baby products, compared to their competitors' products." *Id*. at 5 (emphasis added).  The Congressional Report further characterized Plum's "evasion" as "concerning," as even limited independent testing revealed the presence of concerning levels of toxic heavy metals in its baby food.  *Id*. at 5, 45.

20.  Notably, Defendant sells Plum Organics products for babies as young as four months old. *See id*. at 5.

21.  The FDA and other organizations have set rules and/or issued guidelines and recommendations as to the maximum allowable or advisable and safe levels in various different types of products of inorganic arsenic, lead, cadmium and mercury. *See generally id*. at Point II.  In many instances, according to the independent testing, the test results of Defendant's baby foods and their ingredients eclipse those levels for inorganic arsenic, lead, cadmium, and mercury. *See id*. at Findings, at 2-5.

**Arsenic**

22.  As per the Congressional Report, arsenic is ranked as number one for "substances

CLASS ACTION COMPLAINT

present in the environment that pose the most significant potential threat to human health, according to the Department of Health and Human Services' Agency for Toxic Substances and Disease Registry (ATSDR)." *Id.* at 10. Arsenic exposure has severe health risks, including damage to the central nervous system and cognitive development in children. *See id.* Full Scale IQ is severely negatively affected in children for verbal and performance domains and memory. *See id.* One study concluded that 5 ppb of arsenic in drinking water caused children to have significant reductions in Full Scale IQ and other related scores. *See id.*

23. The Congressional Report further states that there "is no established safe level of inorganic arsenic consumption for babies." *Id.* at 13. While certain organizations such as Healthy Babies Bright Futures contend that there should be a goal of no measurable inorganic arsenic in baby food, Consumer Reports suggests it should be no more than 3 ppb. *See id.* For bottled water, the FDA has set the maximum inorganic arsenic level at 10 ppb and the EPA has set a 10 ppb cap on drinking water, as have the European Union (EU) and WHO. *See id.* The FDA has only set one final standard to date, which is a 100 ppb limit for inorganic arsenic for infant rice cereal. *See id.* at 37.

24. As stated above, Defendant refused to produce its testing standards and specific testing results to the Subcommittee, effectively hiding the actual level of toxic heavy metals, including arsenic, in its products. Rather than provide its internal testing standards and results relating to the presence of arsenic, Defendant produced only a spreadsheet declaring that each of its products "meets criteria" without actually stating what the criteria are.

25. According to the Congressional Report, limited independent testing was performed on certain Plum products, which revealed that Plum Organics Gentle Organic Infant Formula with Iron, Milk-Based Powder (for ages 0-12 months) contained 4.6 ppb arsenic. *See* Congressional Report, Appendix A, at 20. Upon information and belief, independent also revealed the following:

- Plum Organics Little Teethers Organic Multigrain Teething Wafers - Banana with Pumpkin - Baby Crawler contained 49.9 ppb arsenic. *See id.* at 27.

- Plum Organics Mighty Morning Bar - Blueberry Lemon – Tots (for ages 15 months and up) contained 39 ppb inorganic arsenic, with 40 ppb total arsenic. *See id.*

- Plum Organics Just Prunes Organic Baby Food -1 (for ages 4 months and up) contained 7.6 ppb arsenic. *See id.* at 24.

- Plum Organics Just peaches - organic baby food (for ages 4 months and up, stage 1) contained 7.2 ppb arsenic. *See id.* at 23.

- Plum Organics Apple, Raisin & Quinoa Organic Baby Food – 2 contained 5.6 ppb arsenic. *See id.* at 25.

- Plum Organics Just Sweet Potato Organic Baby Food – 1 (for ages 4 months and up) contained 3.1 ppb arsenic in one testing and 2.3 ppb arsenic in a separate testing. *See id.* at 22.

26.     In addition, upon information and belief, testing recently conducted by an independent laboratory further confirmed the presence of undisclosed Heavy Metals in the Tainted Baby Foods:

| | Arsenic (ppb) | Cadmium (ppb) | Lead (ppb) | Mercury (ppb) |
|---|---|---|---|---|
| Plum Organics Pear, Purple Carrot, & Blueberry Organic Baby Food, Sample 1 | 7.6 | 3.4 | 4.6 | < 1.9 |
| Plum Organics Pear, Purple Carrot, & Blueberry Organic Baby Food, Sample 2 | 7.5 | 4.3 | 4.3 | < 1.9 |
| Plum Organics Pear, Spinach, & Pea Organic Baby Food, Sample 1 | 3.4 | 20.1 | 1.6 | < 1.7 |
| Plum Organics Pear, Spinach, & Pea Organic Baby Food, Sample 2 | 4.0 | 27.3 | 1.8 | < 1.7 |
| Plum Organics Just Sweet Potato Organic Baby Food, Sample 1 | 3.0 | 3.5 | 31.0 | < 1.8 |
| Plum Organics Just Sweet Potato Organic Baby Food, Sample 2 | 2.9 | 3.9 | 30.0 | < 1.6 |

CLASS ACTION COMPLAINT

| Plum Organics Mighty 4 Blends Banana, Blueberry, Sweet Potato, Carrot, Greek Yogurt & Millet Tots Pouch | 2.8 | 2.9 | 2.7 | < 1.7 |
|---|---|---|---|---|
| Plum Organics Mighty 4 Blends Banana, Kiwi, Spinach, Greek Yogurt & Barley Tots Pouch | 7.4 | 7.7 | 3.9 | < 1.8 |

27.    As stated above, only limited independent testing was performed on Defendant's products, and thus, the products referenced herein as containing high levels of arsenic are not an exhaustive list.

**Lead**

28.    The Congressional Report noted that lead is number two on ATSDR's list of substances that pose the most serious threat to human health.  *See* Congressional Report at 11. Even small amounts of exposure are dangerous, especially for children, and can cause behavioral issues, decreased cognitive performance, delayed puberty, and reduced postnatal growth.  *See id.* Early childhood lead exposure negatively affects school performance and test scores.  *See id.* These effects can be permanent.  *See id.*

29.    As the Congressional Report states, "[t]here is a growing consensus among health experts that lead levels in baby foods should not exceed 1 ppb."  *Id.* at 21.  In other products, the FDA set a 5 ppb lead standard for bottled water; the WHO set a 10 ppb provisional guideline for drinking water; the EPA set an action level of 15 ppb in drinking water; the FDA set standards for juice at 50 ppb and candy at 100 ppb; and the EU set a maximum level of 20 ppb in infant formula. *See id.*

30.    According to the Congressional Report, the Subcommittee's independent testing of Defendant's products revealed that Plum Organics Just Sweet Potato Organic Baby Food – 1 (for ages 4 months and up) contained 14 ppb lead, well above the consensus among health experts that lead levels in baby foods should not exceed 1 ppb.  *See id.*, Appendix A, at 22.

31.     Independent testing also revealed that Plum Organics Gentle Organic Infant Formula with Iron, Milk-Based Powder (for ages 0-12 months) contained 4.7 ppb lead.  *See id.*, Appendix A, at 20.  In addition, the testing performed by the Subcommittee revealed:

- Plum Organics Just Sweet Potato Organic Baby Food – 1 (for ages 4 months and up) contained 5.6 ppb lead.  *See id.* at 22.

- Plum Organics Just Prunes Organic Baby Food – 1 (for ages 4 months and up) contained 2.5 ppb lead.  *See id.* at 24.

- Plum Organics Pumpkin Banana Papaya Cardomom (for ages 6 months and up) contained 1.4 ppb lead.  *See id.*

32.     As stated above, only limited independent testing was performed on Defendant's products, and thus, the products referenced herein as containing high levels of lead are not an exhaustive list.

**Cadmium**

33.     The Congressional Report states that cadmium is seventh on ATSDR's list of substances in the environment that pose the most serious threat to human health.  *See* Congressional Report at 12.  Cadmium has been associated with decreases in IQ and ADHD.  *See id.*

34.     Outside of baby foods, the EPA has a 5 ppb limit for drinking water; the FDA has a 5 ppb limit for bottled water; and the WHO has a 3 ppb limit for drinking water.  *See id.* at 29.  Healthy Babies Bright Futures contends there should be no measurable cadmium in baby food and Consumer Reports' position is there should be a limit of 1 ppb cadmium in fruit juices.  *See id.*  The EU set a limit from 5-20 ppb cadmium for infant formula.  *See id.*

35.     According to the Congressional Report, the Subcommittee's independent testing of Defendant's products revealed that Plum Organics Mighty Morning Bar – Blueberry Lemon – Tots (for ages 15 months and up) contained 24.3 ppb cadmium.  *See id.*, Appendix A, at 27.  Independent also revealed the following:

- Plum Organics Little Teethers Organic Multigrain Teething Wafers – Banana with Pumpkin – Baby Crawler contained 6.3 ppb cadmium.  *See id.*

- Plum Organics Just Sweet Potato Organic Baby Food – 1 (for ages 4 months and up) contained 2.7 ppb cadmium in one testing and 2.3 cadmium in another testing.  *See id*., Appendix A, at 22.

- Plum Organics Pumpkin Banana Papaya Cardomom (for ages 6 months and up) contained 2.4 ppb cadmium.  *See id*., Appendix A, at 24.

- Plum Organics Apple, Raisin & Quinoa Organic Baby Food – 2 contained 1.9 ppb cadmium.  *See id*., Appendix A, at 25.

36.     As stated above, only limited independent testing was performed on Defendant's products, and thus, the products referenced herein as containing high levels of cadmium are not an exhaustive list.

**Mercury**

37.     According to the Congressional Report, Mercury is third on the ATSDR's list of substances in the environment that pose the most serious threat to human health.  *See id.* at 12. Studies have shown that higher blood mercury levels in children 2 to 3 years old were associated with autistic behaviors among preschool age children.  *See id.* at 12-13.

38.     Outside of the baby food context, the EPA limits mercury in drinking water to 2 ppb.  *See id.* at 32.  Healthy Babies Bright Futures contends there should be no measurable mercury in baby food.  *See id.*

39.     According to the Congressional Report, the Subcommittee "*was disturbed that, for mercury, which is a powerful neurotoxin, [Plum] notes with asterisks that it has no criterion whatsoever,* stating: 'No specific threshold established because no high-risk ingredients are used.' However, despite [Plum] having no mercury threshold, [Plum] still marked every food as 'meets criteria' for mercury.  *This misleading framing—of meeting criteria that do not exist—raises questions about what [Plum's] other thresholds actually are, and whether they exist.*"  *Id*. at 45

CLASS ACTION COMPLAINT

(emphasis added).

40.     According to the Congressional Report, the Subcommittee's independent testing of Defendant's products revealed that Plum Organics Little Teethers Organic Multigrain Teething Wafers - Banana with Pumpkin - Baby Crawler contained 0.726 ppb mercury.  *See* Congressional Report, Appendix A, at 27.  The Subcommittee's limited testing generally revealed lesser amounts of mercury in Defendant's products.  *See id.*, Appendix A.

41.     As stated above, only limited independent testing was performed on Defendant's products, and thus, the products referenced herein as containing high levels of mercury are not an exhaustive list.

42.     Baby foods containing dangerous levels of toxic Heavy Metals bear no label or warning to parents.  But the Congressional Report makes clear that this is unacceptable and deceptive.

43.     As a result of its studies of toxic Heavy Metal levels in baby food, the House Subcommittee has recommended that parents should avoid baby foods that contain ingredients testing high in toxic Heavy Metals, such as rice products.  *See id.* at Findings, Paragraph 5.

44.     Baby food manufacturers hold a special position of public trust.  Consumers believe that they would not sell products that are unsafe.  Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food.   As the House Subcommittee's Report reveals, baby food manufacturers, including Defendant, have violated the public trust.  *See id.* at Findings, Paragraph 6.

45.     Despite the dangerous levels of toxic and Heavy Metals that Defendant knows to be contained in its Tainted Baby Foods, as noted above, on its website, Defendant falsely represents to parents that it has a strong commitment to health and nutrition as well as the quality and safety of its baby products.  Defendant's website states: "Plum was founded on the belief that

CLASS ACTION COMPLAINT

little ones deserve the very best food from the very first bite."[10]  Defendant further touts that it is "confident in the safety and quality of our products.  Our top priority is to serve children healthy, nutritious food made from the best ingredients."[11]  Moreover, Defendant states, "We want to assure you that Plum's products are safe (and delicious) to eat!"[12]  Each of these statements is materially false and misleading given Defendant's sales of its Tainted Baby Foods.

46.    Based on Defendant's decision to advertise, label, and market its Tainted Baby Foods as healthy, nutritious, and safe for consumption, it had a duty to ensure that these statements were true and not misleading, which it failed to do.

47.    The Tainted Baby Foods are available at numerous retail and online outlets. However, as discussed above, Defendant fails to disclose they contain or are at risk of containing dangerous levels of Heavy Metals or other undesirable toxins or contaminants.  Defendant intentionally omitted these contaminants to induce and mislead reasonable consumers to purchase its Tainted Baby Foods.

## III.   CLASS ACTION ALLEGATIONS

48.    Pursuant to the provisions of Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of herself and a nationwide Class defined as:

> **All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in the United States for personal/household use, and not for resale (the "Class" or "Nationwide Class").**

49.    Plaintiff Vanessa Mathiesen also seeks to represent a subclass, defined as follows:

---

[10] www.plumorganics.com/mission/ (last accessed March 12, 2021).

[11] www.plumorganics.com/faqs/ (last accessed March 12, 2021).

[12] *Id.*

**All persons who, during the applicable statute of limitation period to the present, purchased Defendant's Tainted Baby Foods in California for personal/household use, and not for resale.**

50.     Certification of Plaintiff's claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3) are satisfied.  Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

51.     **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied.   The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believe that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiff.  Plaintiff believes that the identity of Class members is known or knowable by Defendant or can be discerned through reasonable means.  Class members may be identified through objective means.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

52.     **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied.   This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a.   whether Defendant engaged in the deceptive and misleading business practices alleged herein;

b.   whether Defendant knew or should have known that the Tainted Baby Foods contained dangerous levels of Heavy Metals;

- 14 -

CLASS ACTION COMPLAINT

c.  whether Defendant represented and continues to represent that the Tainted Baby Foods are healthy, nutritious, made from the best ingredients, and safe for consumption;

d.  whether Defendant represented and continues to represent that the manufacturing of its Tainted Baby Foods is subjected to rigorous quality standards;

e.  whether Defendant failed to disclose that the Tainted Baby Foods contained dangerous levels of Heavy Metals;

f.  whether Defendant had knowledge that those representations were false, deceptive, and misleading and was unjustly enriched by its actions;

g.  whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

h.  whether the misrepresented and/or omitted facts are material to a reasonable consumer;

i.  whether Defendant violated California's Consumer Legal Remedies Act, California Civil Code §§1750 *et seq.*;

j.  whether Defendant violated the California False Advertising Law, California Business & Professions Code §§17500 *et seq.*;

k.  whether Defendant violated California's Unfair Competition Law, California Business & Professions Code §§17200 *et seq.*;

l.  whether Plaintiff and members of the Class were injured and suffered damages;

m.  whether Defendant's misconduct proximately caused Plaintiff's and the Class members' injuries; and

CLASS ACTION COMPLAINT

1
2
       n.  whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

3
4
5
6
7
8
     53.  **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied.  Plaintiff is a member of the Nationwide Class and California Subclass, having purchased for personal/household use Tainted Baby Food products that were manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

9
10
11
12
13
14
15
16
17
     54.  **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied.  Plaintiff is an adequate Class representative because she is a member of the Nationwide Class and California Subclass and her interests do not conflict with the interests of the other members of the Class that she seeks to represent.  Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interests in mind.  Plaintiff has retained counsel competent and experienced in complex class action litigation of this type and Plaintiff intends to prosecute this action vigorously.  Plaintiff, and her counsel, will fairly and adequately protect the Class's interests.

18
19
20
21
22
23
24
25
26
27
28
     55.  **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.  As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class's claims.  In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful

conduct.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

56.  **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.  Defendant has acted, or refused to act, on grounds generally applicable to the Class making final declaratory or injunctive relief appropriate.

## IV.  CAUSES OF ACTION

### COUNT I
**(Negligent Misrepresentation Against Defendant on Behalf of the Nationwide Class or, Alternatively, the State Subclass)**

57.  Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

58.  Plaintiff reasonably placed her trust and reliance in Defendant's representations that the Tainted Baby Foods were as marketed to them and the Class, and were healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and did not contain Heavy Metals or other undesirable toxins or contaminants.

59.  Because of the relationship between the parties, Defendant owed Plaintiff and the Class a duty to use reasonable care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Tainted Baby Foods, and to impart correct and reliable disclosures concerning the presence of Heavy Metals or other undesirable toxins or contaminants in the Tainted Baby Foods or, based upon their superior knowledge, having spoken, to say enough to not be misleading.

60.  Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class

that did not have the ingredients, qualities, characteristics, and suitability for consumption as marketed by Defendant and by providing false, misleading, and/or deceptive information regarding the nature of the Tainted Baby Foods.

61.    Defendant knew or should have known the ingredients, qualities, and characteristics of the Tainted Baby Foods were not as advertised or suitable for their intended use (consumption by infants) and were otherwise not as warranted and represented.

62.    Plaintiff and the Class reasonably and justifiably relied upon the information supplied to them by the Defendant.  A reasonable consumer would have relied on Defendant's warranties, statements, representations, advertising, packaging, labeling, and other marketing as to the quality, make-up, and included ingredients of the Baby Foods.

63.    As a direct and proximate result of Defendant's misrepresentations, Plaintiff and the Class suffered actual damages in that they purchased the Tainted Baby Foods that were worth less than the price paid and that they would not have purchased at all had they known they contained or may contain Heavy Metals or other undesirable toxins or contaminants that do not conform to the products' labels, packaging, advertising, and statements.

64.    Defendant failed to use reasonable care in its communications and representations to Plaintiff and the Class, especially in light of their knowledge of the presence of Heavy Metals or other undesirable toxins or contaminants in the Tainted Baby Foods and the importance consumers place on ingredients when deciding whether to purchase products such as the Tainted Baby Foods.

65.    By virtue of Defendant's negligent misrepresentations, Plaintiff and the Class have been damaged in an amount to be proven at trial or alternatively, seek rescission and disgorgement under this Count.

CLASS ACTION COMPLAINT

## <u>COUNT II</u>
**(Violations of California's Consumer Legal Remedies Act,
California Civil Code §§ 1750, *et seq.*, Against Defendant on Behalf of the Class)**

66.     Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

67.     Plaintiff and each proposed Class member are a "consumer," as that term is defined in California Civil Code § 1761(d).

68.     The Tainted Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

69.     Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

70.     Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction" as that term is defined in California Civil Code section 1761(e).

71.     Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

a)  California Civil Code § 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Tainted Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and by failing to make any mention of Heavy Metals or other undesirable toxins or contaminants in the Tainted Baby Foods;

b)  California Civil Code § 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Tainted Baby Foods were of a particular standard, quality, or grade, when they were of another;

CLASS ACTION COMPLAINT

c) California Civil Code § 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Tainted Baby Foods with intent not to sell them as advertised; and

d) California Civil Code § 1770(a)(16), by representing that the Tainted Baby Foods have been supplied in accordance with previous representations when they have not.

72.     As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Tainted Baby Foods.

73.     Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code § 1780(e) and California Code of Civil Procedure § 1021.5.

## **COUNT III**

**(Violations of California False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*, Against Defendant on Behalf of the Class)**

74.     Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

75.     California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

76.     As set forth herein, Defendant's claims that the Tainted Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public.

77.     Defendant's claims that the Tainted Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are untrue or misleading, as is failing to

mention the presence of Heavy Metals or other undesirable toxins or contaminants in the Tainted Baby Foods.

78.     Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

79.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if they can be assured that, so long as the Tainted Baby Foods are as advertised: healthy, nutritious, organic, made from the best ingredients, and safe for consumption, and do not contain Heavy Metals or other undesirable toxins or contaminants.

80.     Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Tainted Baby Foods.

## COUNT IV
**(Violations of the Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*, Against Defendant on Behalf of the Class)**

81.     Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

82.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

83.     Defendant's statements that the Tainted Baby Foods are healthy, nutritious, organic, made from the best ingredients, and safe for consumption are literally false and likely to deceive the public, as is Defendant's failing to make any mention of Heavy Metals or other undesirable toxins or contaminants in the Tainted Baby Foods.

**Unlawful**

84.     As alleged herein, Defendant has advertised the Baby Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws: (i) the CLRA, California Business & Professions Code sections 1750, *et seq*.; and (ii) the False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

85.     Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Tainted Baby Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

86.     Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Tainted Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

87.     Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Tainted Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

88.     In accordance with California Business & Professions Code § 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.  Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

89.     On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Tainted Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

### COUNT V
**Unjust Enrichment**
**(On Behalf of Plaintiff Mathiesen and the Nationwide Class)**

90.     Plaintiff, individually and on behalf of the Class, repeats and re-alleges the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

91.     Plaintiff and Class members conferred a monetary benefit on Defendant. Specifically, they purchased baby food from Defendant and provided Defendant with their monetary payment.   In exchange, Plaintiff and Class members should have received from Defendant goods and services that were healthy and nutritious and not tainted with dangerous levels of Heavy Metals.

92.     Defendant knew that Plaintiff and Class members conferred a benefit on it and accepted or retained that benefit.  Defendant profited from Plaintiff's purchases and used Plaintiff and Class members' monetary payments for business purposes.

93.     Defendant failed to disclose to Plaintiff and Class members that its Tainted Baby Foods were unhealthy and contained dangerous levels of Heavy Metals and did not provide product that Plaintiff and Class members were promised.

94.     If Plaintiff and Class members knew that Defendant's Tainted Baby Foods were unhealthy and toxic as alleged herein, they would not have purchased Defendant's Tainted Baby Foods.

95.     Plaintiff and Class members have no adequate remedy at law.

96.     Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class members conferred on it.

97.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class members overpaid.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a)    Certify the Nationwide Class, including the California Subclass, and appoint Plaintiff and her counsel to represent the Nationwide Class and California Subclass;

b)    Find that Defendant engaged in the unlawful conduct as alleged herein and enjoin Defendant from engaging in such conduct;

c)    Enter a monetary judgment in favor of Plaintiff and the Class, including the California Subclass, to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate;

d)    Require Defendant to rectify all damages caused by its misconduct;

e)    Award Plaintiff and the Nationwide Class, and California Subclass, reasonable attorneys' fees and costs of suit, as allowed by law; and

f)    Award such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

CLASS ACTION COMPLAINT

Dated:  March 12, 2021

Respectfully submitted,

*/s/ Michael Liskow*
Michael Liskow, Esq. (243899)
Janine L. Pollack, Esq. (*pro hac vice* forthcoming)
**CALCATERRA POLLACK LLP**
1140 Avenue of the Americas
9th Floor
New York, New York 10036
Phone: (917) 899-1765
Fax:  (332) 206-2073
Email:  mliskow@calcaterrapollack.com
Email:  jpollack@calcaterrapollack.com

Lori G. Feldman, Esq. (*pro hac vice* forthcoming)
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-justice.com
E-Service: eService@4-Justice.com

David J. George, Esq. (*pro hac vice* forthcoming)
Brittany L. Brown, Esq. (*pro hac vice* forthcoming)
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
E-Service: eService@4-Justice.com

***Counsel for Plaintiff***

CLASS ACTION COMPLAINT